Good morning, Your Honor. I'm Mary Geddes for Kirk Grable, and Kirk Grable is seeking a new trial. He's seeking a new trial because the trial court judge allowed in evidence on the theory that it was relevant and also probative of the fact that Mr. Grable had exercised sufficient control over his girlfriend, Matrona Nazaroff, such that he enlisted her in the trial. He enlisted her assistance in storing firearms in her bedroom. Now, both of the pieces of evidence that I want to talk about this morning actually didn't establish that at all, that he had enlisted her assistance in storing firearms. Did she ever testify that he enlisted her assistance in storing firearms? Was that the theory of the case? Did she testify that he enlisted, that he helped? No. In fact, she said the contrary thing. With respect to the case itself and the March 10, 2001 firearms issue, she said that she thought she had only seen one of the firearms that the police found in her bedroom. And she never said that she had partially cooperated in storing them or anything else? No, she never did. She testified as a hostile witness to the United States, did she not? She did not, Your Honor. She was not ever characterized as a hostile witness. Well, I mean, I know the district court didn't give her the imprimatur, but she was a reluctant witness, was she not? I thought I saw some reference to that. No, I searched that to make sure that that was not true, and that certainly was not reflected in either opening or closing arguments by the government either, that characterization. In fact, what she said was, although she acknowledged being hurt and wronged and betrayed, and acknowledged some attempts along the way to maintain contact with Kurt Grable, what she said was that she was coming forth to tell the truth. So you characterize her as testifying as the woman wronged in the sense that the jury might have thought she was testifying in retaliation for the fact that he ran off to Washington with another woman? Well, certainly that's true. That came out, did it not? That certainly did. And I think that the defense attorney, Ms. Tatter, also elicited her acknowledgement that she might have very well said that she wanted to, quote, bury Kurt at trial. Okay. So, no, I don't think that the court ever viewed her, nor did the government. But in any event, don't we have to view the evidence and the inferences to be drawn therefrom in the light most favorable to the prosecution, given the outcome of the jury's verdict? Well, of course, that is the standard, but you have to look at the evidence, of course, what it said. And the government's evidence here, in terms of what Matrona said, and it all turned on Matrona, was that she had never seen him bring in any guns, him possess any of the guns, and she, in fact, had never seen any of the guns. So she certainly wasn't testifying in any way consistent with the government. And that statement is in no way consistent with conviction. It's just inconsistent with one theory. Well, in order to buy the government's theory, you would have to disbelieve Matrona's testimony. And at no point in the government's policy… No, wait. Go ahead. Why would you have to disbelieve? I mean, the government's theory is that these were his guns. Now, there are two ways it could have been his guns. They could have been his guns because he got Matrona to hide them for him. And they could be his guns because he snuck them into the bedroom without her knowing about it. And instead of getting her permission, basically hid them there against her will. But as Dr. Bernstein suggests, these are just two different ways in which the government could prove its case. Except that with respect to the second theory that you posited, there wasn't any evidence to support that. The evidence in the record was that on the day of March 10th, Matrona had been staying there. Her gravel was not present. And she had been sleeping in the bedroom on the mattress under which many guns were being stored, or were stored at the time that the police arrived. But isn't your position with regard to the evidence, maybe I'm misunderstanding, that yes, precisely because she didn't testify that she helped him hide the guns, true, there was another theory on which she might have been convicted. But as to that theory, the evidence regarding their relationship and how he controlled her and all the very negative stuff that was said about him was totally irrelevant and shouldn't have been admitted. Ultimately, you're making an evidence argument, not an argument about sufficiency of the evidence. So the fact that there was another theory isn't the point. The point is that the theory, that there was no evidence for this theory, which allowed this prejudicial evidence to come in. Is that what you're saying? That's exactly right. And that also goes with respect to... Why isn't this the evidence? Why do you need other evidence if the government has this as evidence for that theory, and this is the evidence that supports that theory? Well, this is a constructive, of course, it was a very close constructive possession case. That's what we have juries for. They sort these things out. They go in, they find her sleeping on the mattress with her guns underneath them, and they can infer, after all the evidence comes in, that she was sitting there hiding her guns in the mattress, or they could infer, no, your client was hiding their guns on the mattress, either telling her about it or not telling her about it. Now, if you're arguing insufficiency, you're saying, look, there's no sufficient evidence, they found her in the room with the guns, she's sleeping on top of them, there's not enough evidence to connect my client to it, that would be a different argument. Insufficiency argument. But I don't hear you making an insufficiency argument. No, what we talked about was, in our brief, what we argued in our brief,  the two prior bad acts, 96 and 97, and also the Nazaroff's family's ability to testify without restriction, which allowed for the admission of much bad action. Do you want to talk about the other incidents? I would like to talk about that. The backpack incident? Yes, I'd like to talk about, in particular, the 1996... And the handing through the window incident? I'd like to talk about the 1996 incident, in particular. I forget which one is which. That was when Matrona was 16 and he was just 18, and he had discharged a firearm in the street outside of the trailer. And she says, hand me the gun. Yeah, well, now that evidence came in, and it came in in abundance through three different witnesses, and also was reiterated in opening statement as well as argued in closing. That testimony was offered for the purpose and admitted for the purpose of establishing that Kirk Grable had a scheme to use Matrona to hide his weapons. Why did that matter, though? Why wasn't it at least demonstrated that his guns were hidden in her room, however they got there? Because that was his gun, and it was eventually hidden in her room. Because the exception, the evidentiary rule under which it was admitted... It has to be intended. ...goes to his state of mind. And what Matrona testified to was, in fact, that she had proposed and called over to him and asked him to hand in the gun, which she had, so it was certainly indicative only of her state of mind and not his. You know, this is... Let's say you're right about this, which I'm not sure you are, but it's a big deal, you know, what's the prejudice? You know, if it proves anything, it proves the government's case. If it proves anything at all, you might say, well, it doesn't really prove that very much, but then there's not much prejudice, you know, it's not an illegal gun. This is Alaska, you know, shooting off a gun is not... It's not illegal. It's not the same as doing it in Hollywood, let's say, or New York, or one of those places. People don't exactly hold it against you. So, I mean, I just don't see where this really hurt your client very much, if it hurt them at all, except maybe in helping, you know, in the legitimate way of helping prove a prosecution's case. Well, I think that it, first of all, it was hugely relied upon by the government. It wasn't just something that came in and, you know... Well, it was their theory, was it not? Their response to his defense of what guns? I didn't have any guns at Madrona's, and if they were, they weren't my guns. Well, his defense was a failure proof, of course. Right, they're not my guns, and I don't know anything about them, and you can't tie those guns to me. And in response, the government introduced evidence of these prior incidents to show that he did have, if you believe the government's evidence, a pattern of using her as someone in whom he entrusted his guns, so that when the police showed up, he could be standing outside after the shots were fired without any guns, and say, I don't know what you're talking about. What shots? I didn't hear any shots. Well, except that that was not what it was being admitted for. It was being admitted for to show his state of mind. Because that would be propensity evidence, essentially. That would simply say, once before, he hid his guns in the house, and now he's hiding his guns in the house again. And it was also, remoteness was also a challenge made as well to the admission of that information. And the similarity, the lack of similarity, the dissimilarity between the two incidents was also something. But I think you also have to just look at the record to see how much the government relied upon it in this very close constructive possession case. With regard to the evidence about all the very negative characterization of him, and all the terrible things he did to Matrona, that was supposedly being admitted to demonstrate that he controlled her. Was that, was the, and it seemed to be, I thought originally that it was directed at the fact that she had signed a document saying that they were her guns at one point. It was to explain that. Was that document ever admitted? The document was not admitted. So there was no reason to admit it for that purpose. It was, that's correct. It was not in it for that purpose. And you're right about characterizing the reason for the admission of that evidence, the lack of controls or limitations upon the family's testimony. That's found at tab J in Judge Sedwick's ruling, as to what purpose, for what purpose the evidence was coming in, the testimony would be coming in about their relationship. And he said it was coming in to demonstrate, to support the notion that he would be hiding, she would be hiding his guns? Yes. Or to explain why she signed this document? Well, he said that certainly it explained the relationship, but he also said that the most significant aspect of it, the most significant reason for it coming in was that, quote, Mr. Grable had exercised sufficient control over Matrona to have enlisted her assistance in storing his firearms. Isn't that common scheme or plan evidence under 404B? Isn't that what he's saying? And my argument was that that, in fact, was not the evidence that was admitted in terms of the court looking at what evidence is being proffered to establish. But that's what he's saying, isn't he? Isn't that what he's talking about? If that's what the evidence had said, but the court didn't actually make the determination that that was going to be the focus of the testimony. You're not answering my question. I'm trying to understand what Judge Sedgwick meant when he said what you just quoted, and that sounds to me, although he didn't use the term, like he's talking about admitting it under 404B to show common scheme or plan. Yes, that was the purpose for which it was admitted. And if he's right on that, then the rule permits it, does it not? Absolutely. But you're saying it didn't show any common scheme or plan because there was no evidence that she hid the guns from him. Right. Therefore, it didn't show common scheme or plan. Well, what do we do with the 96 incident? If the jury believes the government's theory, that would tend to bolster that theory, would it not? Once again, we have the government saying what evidence, what the theory is of the admission of certain... Right, but if the jury agrees that that happened, that he handed the gun to her before the police got there so that when they arrived in response to the report of shots fired, he'd be standing there empty-handed, that would fit in the government's theory that he was using her to hide the weapon. But the common scheme or plan goes to his intentions. I mean, trying to get into his head, the only way you can do it is to look at the objective evidence, and then the jury has to draw the inference, does it not? Oh, sure. But all the evidence was supposed to be going to... All the evidence that Matrona and her parent offered about the manipulation and the control had to supposedly do... I mean, the justification for all of that venting, I called it toxic venting, I mean, that's really what it was, had to do with how he had manipulated, controlled, and directed her actions. And none of the evidence that came in from her actually supported that. So the judge had not done his job of making sure that the evidence, in fact, fit the strictures under the rule. Okay, thank you. Thank you, Your Honor. Good morning. My name is Todd Michalop. I'm a special assistant United States attorney here in Alaska. How are you, Mr. Michalop? I'm doing well, thank you. Anything you've heard this morning that is inadequate to respond to in your brief? No, Your Honor, unless there are other questions from the panel. Well, I do have questions. What was the basis? First of all, would you agree that the extensive evidence from Matrona, and particularly from her family, regarding the history of the relationship was extremely prejudicial for Mr. I would not agree. For reasons not having to do with the commission of this particular crime, that he was portrayed to be a really bad guy in many ways. I would not agree with that statement, because the issue is whether the evidence... I'm not getting to the relevance question. I just want to know whether there was a lot of otherwise extraneous material in there about how he treated Matrona, about the fact that he'd been in jail previously, about the fact that he was on probation at various times, about the fact that he threatened her, and a bunch of things that had nothing to do with this case, and didn't put him in a good light. Is that not so? That's not so, but was it unfairly prejudicial? All right, that's a different question. First ask me whether it was prejudicial. It's prejudicial, but all evidence is prejudicial. All right, so what does it have to do with this case in any of its details? This case was a constructive possession case. The government... It's not about guns. It has nothing directly to do with whether he asked her to hide the guns. In fact, she didn't say he did ask her to hide the guns. So what does it have to do with? The government was faced with a situation of responding to his defense that they weren't his guns. In order to prove a constructive possession case as this was, the government had to prove that he could exercise control and dominion over those guns. In order to do so, it was fair for the jury to hear and infer from the entire factual situation that he had the power through Matrona to exercise control and dominion over the guns. But she never said that he did that. There was no testimony that he asked me to hide his guns, that he told me there was scant evidence that she knew there was one gun there. There was no direct evidence of that theory. So then what are they supporting with this? I don't think that Matrona necessarily had to directly say, I hid the guns in order for the jury to have found that he... But she said the opposite, in effect. I don't think the question was ever raised, did you hide the guns? Well, if she didn't know they were there, she couldn't have hid them. That's true. But it goes back to painting a picture of the relationship between... Well, that's exactly what it did, but it did so, as far as I could tell, in a way that doesn't connect up with the evidence of a theory of what happened in this case, as to which there was any evidentiary support. But it does rebut Mr. Grable's claims that he didn't live in the house, he didn't have any access to the house. He testified that he didn't live in the house. We know he lives in the house. Well, he didn't testify in this case.  Well, the defense did elicit testimony that he didn't stay there every night. It seemed to be getting to the point where, hey, he wasn't there enough that he could have even put these guns there. Okay, so what does that have to do with his testimony? So you prove, yes, he was and he could have. But what does it have to do with the fact that he pursued her, Washington took her money, wasn't nice to her only when he was in jail, called that his job, etc., etc.? Well, also, just note for the court that this testimony that you are inquiring into was not raised on appeal, and I'm happy to... I'm sorry, what wasn't raised on appeal? The... I guess the third issue that wasn't raised on appeal... The bad guy testimony. I'm sorry? The bad guy testimony. The bad guy testimony. It's not an issue on appeal. I'm sorry, I don't understand that. Well, I think the way it was characterized by the defense was their specific relationship testimony. Right, and it went on and on, and in the course of it, she says things like, he was only nice to me when I was in jail. And there's detail to it, but the relationship testimony is exactly what they were trying to let in. The relationship was he... And those were all parts of it. He used my credit card. That was the point of what you were trying to say. He was a bad guy. He was not nice to her, and not only that, he was only nice to her when he was in jail. And again, I just go back to that both in order to rebut his defense is that he couldn't have had control over these, the government had to paint the picture that he did have control over these weapons, and it was through her, and it was because of all of the parts of their relationship. Was she a reluctant witness? She was, Your Honor. The government, as was pointed out earlier, didn't declare her a hostile witness, but I think as any female who had been treated as she had or any witness for that matter who had been treated as she had would have been reluctant to come testify against a former... When she testified, for example, that she had slept on these mattresses with guns stuffed in between the mattresses, it sort of brings the old fairy tale in mind about the princess sleeping with the pea between the mattresses. Did the jury basically disbelieve that portion of her testimony because it would have been impossible to have been sleeping on the bed without knowing that there were lumps caused by guns underneath the mattress? Well, I wasn't part of the jury, Judge. Well, let me ask the question a different way. When you presented that evidence, did you present it in a way to suggest to the jury that that couldn't have been true, that she must have known there were weapons there if she was sleeping on top of them? You could put all those weapons under a mattress and not cheat them. Depends on the size of the weapon, I guess. We haven't got that far yet. I don't know the answer to that question. What was the theory of the case at the closing argument? The theory was similar. That she hid the guns for him? No. No, that was never the theory of the case. There was no evidence of that. Therefore, all the evidence that tended to show that the reason for letting in all this relationship evidence, which only, if it went to anything, went to that, and I would question whether it was unduly prejudiced or anything for that, had nothing to do with the government's theory of the case. The government's theory of the case was that he had, through his relationship with her, through his abuse of her both physically and emotionally, through his control of her credit cards and bank accounts and everything else, through his power over her, he had the power to exercise control over these weapons. And it wasn't, as you pointed out, that she hid them for him. It wasn't that they were her weapons. And it wasn't that they were her weapons. So I don't understand the theory. What is it? It was that they were in her room,  Was this person's case in the brief, I didn't really focus on it, but were there objections to the bad guy evidence? Not evidence about the guns, but evidence about how he treated her. There were, Your Honor. In fact, the defense did file a motion in limine that was opposed by the government. It was considered by the court. And then allowed in. To cover what? The defendant attempted to limit all evidence against their relationship. What do you mean by it's not raised in the brief? On page 24, there's a heading that says, The court erred in allowing evidence pertaining to the defendant's relationship that was more prejudicial than probative. And it goes on for several pages, including on page 25, a huge list about what was wrong, what he said, that Kirk were able to ran her, that he was controlling her, that she was not allowed to do anything, that she was not allowed to have any friends, that she was not allowed to hang around with family, that she was, et cetera, et cetera, et cetera. So what do you mean by saying it wasn't raised? That the only time he would need her was when he was in trouble in court, going to jail, et cetera. So what do you mean by saying it's not raised in the brief? I'll withdraw that, Your Honor. I do see what you're pointing out. But nevertheless, I do still stand on the fact that this was raised, as I just said, in a motion in limine. It was considered by the court, and the court allowed it to come in. It was then again raised in a motion for mistrial. And I will point out that this court has given, and indeed all the circuits give considerable deference to trial courts' rules on evidentiary issues such as this. And I don't see any reason why. But now you've left me confused. If you weren't relying on it in order to show that he was using her to hide the weapons for him, what is the probative value of this evidence that outweighs its prejudicial impact? The probativeness also goes to the rebuttal of his defense, that he couldn't have exercise control and dominion over these weapons because he didn't have access to the house or he never slept there or he had a bad relationship with Matrona's father, et cetera. And all of that was a clearly painted picture by the defense in their opening statement. And I might point that out as well, that while the defense was attempting to keep out all of this evidence of their relationship on the one hand, on the other hand they were bringing in all of this evidence of the atmosphere in the house. And the government could not have put on its case, could not have given a clear picture of the entire scenario without the evidence of the relationship that proved that he had the exercise, had the power to exercise control and dominion over the weapons. The weapons, yes, but the person, this seems to me to be quite different. Because there were different mechanisms by which he could have been doing that and the government was relying on one but not on another. He wasn't relying on the notion that she was responsible for the guns being there in any way, even through a control mechanism. In an actual possession case, this evidence would have been irrelevant. This is a constructive possession case and therefore it's relevant and it's also probative. Constructive meaning that he was in possession because, whether or not there were his guns? I don't understand, what do you mean by constructive? There's constructive evidence but what do you mean by constructive possession? Constructive possession means that he has the power to exercise control and dominion over the weapons. It doesn't mean that he has it in his hands. I just think he doesn't have it in his hands. It means that it is in Matrona's bedroom and that because of his power over her he has the power to exercise control and dominion over those weapons as well. Okay, thank you. Thank you. The case is argued and submitted.
judges: Kozinski, Berzon, Tallman